We'll turn to Holler v. Saul. Good morning, your honors. Hold on, Mr. Bowles. Hold on. We have someone from the dish case. We're not we're not doing dish yet. We're doing bowls and we have I'm sorry. We're doing Holler v. Saul. We have Mr. Bowles. I see Mr. Norwood now. Mr. Bowles. Good morning again. I think we saw you yesterday. You can proceed. Yes. Good morning. Your honor, your honors. I should say my name is Christopher bows. I'm the attorney for plaintiff appellant Richard Holler. Mr. Holler challenges the administrative law judges residual functional capacity determination, which found that he was limited to medium work provided that he only be allowed permitted to do simple routine and repetitive tasks and that he must avoid crowds, which was defined as groups of people over 100. This residual functional capacity has no foundation in the record. The this court has held in the De Leon and all both case that a vocational experts testimony that jobs exist is only helpful where the administrative law judges residual functional capacity accurately reflects the established limitations and here it cannot possibly be the case. We know that because the treating psychologist. Dr. James Thalman diagnosed rapid cycling bipolar disorder and what this means is that he experiences highs and lows and that they fluctuate at times very quickly. Dr. Thalman reported that Mr. Holler speech would be rambling and pressured at times and that he was very impulsive and disruptive with respect to social functioning. Dr. Thalman stated that he was very impulsive and disruptive with respect to interacting with the public interacting with supervisors and getting along with co-workers. And so we have this very strong opinion by a treating source saying he has significant problems with social functioning and this finding has more than reasonable support in the record a treating psychiatrist. Dr. Gina Perez treated Mr. Holler with medications throughout the same period of time that Dr. Thalman was treating him and she also noted that his speech was rapid pressures overproductive. His thought content would be circumstantial or tangential at times. And this Mr. Holler knew that this was going on. He was aware when he was in a manic phase and over talkative and this was embarrassing to him. He knew that he would in his words. He was acting weird and this would make him feel uncomfortable. So we have real palpable problems with his ability to interact with other individuals. The the consultative psychologist in this case, Dr. Judge assigned great weight. This source said that Mr. Holler would be expected to have moderate limitations in relating adequately to others. And then there the other source of evidence in the file is a non-examining state review physician, Dr. Ferrand, who also reviewed the file and he concluded that there were moderate limitations in social functioning. He said that there would be moderate limitations getting along with co-workers and or peers without distracting them or exhibiting behavioral extremes. So when we look at all of this evidence in the record and then you look at the administrative law judges residual functional capacity saying that he just needs to avoid crowds that residual functional capacity doesn't reflect the real and established limitations with respect to social functioning getting along with co-workers and getting along with peers. We would note that the administrative law judges decision perhaps reap the judge reach this conclusion because he doesn't address. Dr. Gina Perez's treatment notes whatsoever in his in his decision and this too is error. We can't have a decision by an administrative law judge that ignores all of the critical evidence that supports the claimants limitations and that's what happens here. Can he found find that he Dr. Thalman was entitled to some weight. Well, that's not ignoring that's that's looking at it closely. Didn't he also find that there were contradictions between what the report was and what the and what and what the underlying notes were. That that that on a number of occasions when Dr. Thalman saw the patient the patient was was lucid and was you know, was was was acting acting appropriately. I apologize if I misspoke but are my point is that Dr. Gina Perez the treating psychiatrist. There's no mention of the bad doctor's notes and yeah, I don't understand that I understand Dr. Thalman is discussed by the administrative law judge and to the extent. I mean, this is a bipolar disorder. It's rapid cycling. So you are going to have instances where the condition is under control and then you'll have other instances where he's moved from either from a depressive phase to manic phase and so pulling out some parts of the in the record where his condition might be controlled with medication, but then ignoring the other parts where he's his speech is rambling pressured. He's his thoughts of circumstantial meaning that it's not to the point. You have to acknowledge that other evidence to as this court found in Estrella conditions that are cyclical. We have to account for the fact that the condition is not static over time. That's exactly what the problem is here in Mr. Holler's case. Well in reviewing this though, don't we have to because there's deference given don't we actually have to be say that the evidence is is that your position is compelled by the record as opposed to just that it perhaps is as greater some greater greater weight. In other words, we're not balancing two positions and picking one. We have to we have to defer to the IJ here unless the evidence is compelling in the other direction. That's that's the test essentially, isn't it? Yes, and no. To the extent that the administrative law judge doesn't adequately address evidence favorable to the claimant and I believe that that's the case with respect to the treating psychiatrist. Dr. Perez who said in her notes that she explicitly supports his application for disability. She didn't write a report, but she just noted. Oh, he's applying for disability and I support this. She says that in the records and we've cited that what is there? What is there apart from mentioning that which you just said? What is there really that he could discuss if that was the if that was the extent of her in her report. She doesn't go into the details. No, but her notes describe exactly what the reasons why Mr. Holler is disabled and rambling speech pressured at times overproductive cognitive impairment. Yeah, but that's all I think I always thought that was common ground. As a general matter, but and there was, you know, there was contradictions apparently in Dr. Fallman's notes and report and also the other doctor consulting doctor had I think was relied on more extensively and she had a different view Lauren stack. Again, even if we take Dr. Stack at one point in time, she saw Mr. Holler. She didn't see him over time like Dr. Fallman and Dr. Perez. So that's the first point I'd like to make with respect to that. She finds that Mr. Holler has moderate limitations in social functioning and relating adequately with others. So she says that that's Dr. Stack. The judge says he's giving great weight to this opinion. So if we give great weight to Dr. Stack's opinion, let's look to the residual functional capacity to see where the difficulty relating adequately with others is reflected in the residual functional capacity. I was I submit to you. It's not there just saying he must avoid crowds doesn't reflect what's actually going on with Mr. Mr. Holler. He testified you have you have some time for rebuttal. Let's hear from Mr. Norwood. Thank you, Your Honor. Good morning, Your Honor's may it please the court. My name is Vernon Norwood and I represent the appellee the Commissioner of Social Security. The commissioners final decision cites substantial evidence of record to support each of its determinations and it complies with all the relevant regulations. The ALJ in this case properly applied the commissioners regulations and she evaluated more than 1100 pages of medical evidence including opinions from a consultative psychologist, a state agency psychological consultant, Mr. Holler's own medical sources and Mr. Holler's own statements regarding his abilities. The ALJ then crafted a decision that is both comprehensive and concise and thus permits for meaningful judicial review. Contrary to Holler's contentions, the ALJ cited to substantial evidence that supports the determination that Holler retained the RFC to perform simple routine and repetitive tasks and importantly Holler did not carry his burden of showing that he could not perform such tasks. The ALJ afforded great weight to the opinion of Dr. Stack, a consultative psychologist who personally examined Holler and who is familiar with the Social Security's disability regulations. Consistent with her examination records, Dr. Stack opined that Holler had no more than moderate limitations in maintaining attention and concentration and moderate impairment in adequately relating with others. Mr. Norwood, what about the point that the ALJ ignored Dr. Perez's opinions or failed to address Dr. Perez's opinions? Well, that's blatantly not true. It's important to realize that Dr. Perez is one of Mr. Holler's treating sources at the Institute of Family Health. Mr. Holler was treated at the Institute of Family Health over the course of years. The ALJ explicitly addressed the treatment records from the Institute of Family Health over the course of years and cited to dozens of pages from those treatment records. The ALJ then found that those treatment records show mental statics examinations that were generally unremarkable, but for some occasional difficulty maintaining attention and concentration. We know the ALJ considers Dr. Perez... You're saying that even though the ALJ did not specifically discuss Dr. Perez's treatment records, the ALJ was considering and discussing these records in essence, he did? Is that what you're saying? Well, what I'm saying is... In essence, she did, I guess. The ALJ is a she. Well, he didn't mention her by name, but he cited to her records explicitly. Now, specifically, what he did was he talked about one of Dr. Perez's notations and that notation was, let's see, let me get this straight. She said that hollers inattention remains very severe. The ALJ explicitly addressed that, so we know that she reviewed Dr. Perez's treatment records. In doing so, the ALJ correctly pointed out that the treatment records from the Institute of Family Health were generally unremarkable, but for this occasional difficulty with attention and concentration. The ALJ explicitly considered that notation and she still assessed, based on her review, the total record that Mr. Holler had no more than moderate difficulties in maintaining concentration and she incorporated those limitations into the residual functional capacity finding by limiting Mr. Holler to simple, routine, and repetitive non-complex tasks. The ALJ afforded great weight to the opinion of Dr. Stack. Of course, Dr. Stack is a consultative psychologist who personally examined Mr. Holler and he is familiar with the social security disability regulations. Dr. Stack found no more than moderate limitations. The ALJ also afforded some weight. You're taking the position that Dr. Stack was given greater weight than Dr. Thalman, correct? Yes. So tell me about why it was appropriate to give Thalman lesser weight. Because Dr. Stack provided support for his opinions. You can look at his record or the report that he submitted and it has mental status examinations. It has reports from Mr. Holler. It talks about Mr. Holler's activities of daily living, his mode of living, and then based on those mental status examination findings, she evaluated no more than moderate limitations. When we look at Dr. Thalman's records, those are contained in like exhibit 9F. We noticed that Dr. Thalman only treated Mr. Holler for a couple of months prior to submitting the medical source statement at issue. During those couple of months, the handwritten notes that Dr. Thalman took, he basically scribbled onto a notepad what Mr. Holler was complaining of. And the notepad itself showed that the meetings with Mr. Holler were so brief that there was no mental status examination. It was basically he just jotted down some of the things he said, made some conclusions, and on the same page would write down other notes from evaluation a couple of weeks later. So he didn't evaluate Mr. Holler very often. He only evaluated him over a couple of months prior to the medical source statement, and the records that he provided do not support his opinion. Moreover, his opinion that Mr. Holler would be highly disruptive or highly disorganized is not supported by his treatment records, and it's inconsistent with the opinions of Dr. Stack, Dr. Farron, the treatment records from the Institute of Family Health, and even more so, it's inconsistent with the words of Mr. Holler himself. Notably, during the relevant period, Mr. Holler told his treating sources at the Institute of Family Health that he had worked at his current job for the past five years, and he was self-employed in computer repair as well as a member of a band. Mr. Holler also told Dr. Stack that during the relevant period, he worked as a computer repair technician. So these activities belie that he was not able to perform simple routine and repetitive tasks, and they support the ALJ's determination that Mr. Holler had no more than moderate limitations when it comes to maintaining concentration and persistence of pace. The ALJ in this instance did accept Mr. Thalman's opinion to some degree, to the degree that it was consistent with other record evidence as well as supported by some of his own findings. We know this because Mr. Dr. Thalman limited plaintiff in his ability to maintain concentration. The ALJ adopted his opinion because it was consistent with the opinions of his treating physicians at the Institute of Family Health, Dr. Farron, and Dr. Stack. However, Dr. Thalman's opinion regarding Mr. Holler being highly disorganized and disruptive finds no support in Dr. inconsistent with every other opinion of record, including records from the Institute of Family Health, where they evaluate Mr. Holler over the course of years, and they didn't find anything as significant as Dr. Thalman finds. Now, how is contention that the ALJ failed to incorporate his limitations in social functioning and maintaining concentration is also without merit? The ALJ properly determined that Holler had no more than moderate limitations in interacting with others based on Holler's statements as well as the opinions of Dr. Stack and Dr. Farron. For instance, Holler explicitly stated that he had no difficulty getting along with family, friends, neighbors, or others unless he was depressed. Treatment notes from the Institute of Family Health show that while his mood fluctuated, it would be unfair to say that he was often depressed, so he did not have problems getting along with people. Also, Dr. Stack, the consultative psychologist who personally evaluated Mr. Holler, found that he had no more than a moderate limitation in interacting with others. Dr. Farron, the state agency psychological consultant who reviewed the medical evidence of record, found that Holler could interact with others without more difficulty. What is a food service worker? What is that job? You know, that's a broad job for somebody that you would find working in a cafeteria. Serving food in a cafeteria. That sort of thing, yeah. It's not in a supermarket. You know, taking care of food in a supermarket, I see. Right. Okay, now, Holler's RFC challenges are without merit for the simple reason that under the substantial evidence standard of review, it's not enough for him to merely disagree with the way the ALJ weighed the evidence or to argue that the evidence in the record can support his position. Instead, what Holler must show is that no reasonable fact finder could have reached the ALJ's conclusions on this record. And the ALJ's conclusions are supported by substantial evidence. And as such, Holler has failed to show that no reasonable fact finder could have reached the ALJ's conclusions on this record. Therefore, since the ALJ's decision is supported by substantial evidence, she applied all the correct commissioners regulations. And because Mr. Holler has not shown that he is incapable of performing simple routine and non-complex tasks, the commissioner's decision is supported by substantial evidence. And we ask respectfully that this court confirm the commissioner's decision. Thank you. Mr. Bowes, your rebuttal. Thank you, Your Honors. I'd like to point out that the reference to Dr. Ferrin, that he was without marked difficulty in getting along with other individuals, does not mean he didn't have moderate difficulty in social functioning. This is the essence of our argument, is that the administrative law judge did not proffer to the vocational expert the actual limitations in social functioning, except that he needed to avoid crowds of more than a hundred people. That limitation appears to be selected from Mr. Holler's testimony, which was that he, you know, he had difficulty in crowds, he could go to a store, but he also said he would have difficulty being online in the store. So that evidence all comes together. If we, if we take the a hundred people in a crowd, the ALJ should have also incorporated the fact that he has trouble standing in a line with other people. With respect to family, getting along with family and friends, the record includes a report from his, his former girlfriend and Ms. Ransom says at 225 that he has trouble getting along with other people. He was once fired for making weird noises and being annoying to everybody. He didn't have the emotional maturity to cope with everyday situations. So that's, that's an actual statement from the third party about Mr. Holler's functioning. The, getting down to it, there's, there's no presentation to the vocational expert of these problems in social functioning. They are in the record from the Family for Institute for Family Health, of which Dr. Perez is the treating psychiatrist. And I won't repeat her findings, but they're in our brief. Finally, Dr. Stack is a consultative physician. Dr. Stack is not a doctor who works at Social Security. Dr. Stack, there's no basis to conclude that Dr. Stack has any familiarity with the Social Security regulations. Dr. Stack is not an agency physician. She is a consultative physician who is meant to be independent of the agency. And because under the vocational experts testimony does not reflect the real functioning, this court should vacate the final decision and remand this case for further additional proceedings to read for an opinion or decision that reflects Mr. Holler's true functional limitations. And if there's nothing else, thank you. Thank you both. The court will reserve.